Your honors, it may please the court, my name is Thomas Birch from the University of Georgia, appointed by the court to represent Mr. John Walters. Today, one of my third-year students, Ms. Madison Mischik, will present argument on her behalf, and I'll be standing by. Thank you, your honors. Thank you. Ms. Mischik, whenever you're ready, please proceed. Your honors, it may please the court, my name is Madison Mischik, and I represent John Walters. After Mr. Walters' arrest, he and his assigned counsel, Thomas Stanley, had no substantive communication for seven months. When Mr. Stanley finally met with Mr. Walters in July 2012, he revealed an expired plea offer from March of that year that would have cut Mr. Walters' ultimate sentence by more than half. Mr. Walters later filed a habeas petition, arguing that Stanley's pervasive failure to communicate, including his failure to relay the March plea offer, deprived him of effective counsel. But the state habeas courts and later the district court found that Mr. Walters did not show prejudice because he did not immediately try to accept the offer when it was finally relayed. Those decisions were incorrect for two reasons. First, they were inconsistent with Missouri v. Fry and Fricklin v. Washington. Second, they were based on an unreasonable determination of the facts. Now, the Supreme Court in Fry said that there was a reasonable probability that Mr. Fry would have accepted an earlier undisclosed plea offer in that case because he ultimately pleaded guilty to a more serious charge with no promise of a sentencing recommendation. And that's essentially what happened here. The plea offer that Mr. Walters ultimately agreed to in January 2013 was significantly less favorable than the one he could have received in March 2012, most notably the March offer would have carried a 20-year sentence, whereas the one he ultimately agreed to left discretion over sentencing to the court. Counsel, that often happens when an initial plea offer is not accepted. And our case of Moschbacher says that subsequent commentary by the defendant is self-serving and usually not worth very much credibility. And apparently the state PCR court didn't find it credible at all. Well, of course, that is true that Moschbacher said that the testimony needs to be deemed credible. Something needs to be present to bolster that testimony. But in Fry, that ultimate acceptance of a lesser deal was the thing that deemed the testimony credible. In this case, you have an actual factual finding that the petitioner changed his mind. He came to a reality that the case was more serious than he had thought at the time he was given the first offer or at that time the first offer was extended and laid out some facts for saying so. I mean, there's some interchanges. He made a pro se offer to the government and he essentially was found to have turned down an interim offer at 28 months. How many months was it? What was the interim offer? 28 years. 28 years, excuse me, 28 years. The first one was 20 years and the second one was 28. And the state court found that he turned that down and he also turned down the offer to try to reopen the first one. So all these facts are in the record and the state court looked at those and made a finding that we don't have the Fry situation. So how do you handle all that? I mean, we're not really allowed, are we, to look behind those facts. We just have to determine whether there's basically whether it was reasonable to make the conclusion even if we weren't to agree. Yeah, so a couple of things. So first, again, the crucial Fry dispositive factor. Why don't you address the facts of this case? We know Fry pretty well. Why don't you focus on... We're basically reviewing, determining whether the state PCR court was acted off the reservation, so to speak. Okay. Yeah, so first, it's another point that I wanted to make that the courts, the state habeas court should have considered Mr. Stanley's failure in context of his broader failures under both Strickland and Fry. Sorry, Strickland asked courts to consider first the fundamental fairness of the proceedings rather than applying the prejudice standard in a mechanical fashion. And similarly, Fry asks what a defendant would have done assuming he received competent counsel. So we need to look at Mr. Walter's responses in the context of the counsel he was receiving. The difficulty you have here is that the state PCR court made a finding not just with respect to one actor, but with respect to two as far as the prejudice was concerned. The PCR court said that not only was Mr. Walter's not prepared to accept the plea offer, but this state judge was not prepared to have his or her hands tied. And the state trial judge was pretty emphatic and said, I would never accept something that had a maximum of 20 years. And the state circuit court, he went down the petitioner's prior convictions and sentences. And he said that none of that had helped him conform his conduct to the law. And he went over the seriousness of the present offense. And then he concludes there's little reason to believe the court would have accepted a plea agreement that was binding on its discretion for a term of only 20 years. So you got a finding made both with respect to Mr. Walter's and with respect to the state trial judge who was in charge of accepting the plea. And so you're in double difficulty as far as proving prejudice here. Because if the state trial judge wasn't going to accept any kind of 20-year plea, and if Mr. Walter's was going to accept, wasn't going to accept the plea deal, how can we say that these factual findings were wrong? Well, yeah, there were two issues with the court's conclusion regarding the trial court's likelihood of accepting the plea offer based on what the court did a year later when Mr. Walter's was ultimately sentenced. And the first is that Strickland specifically says that prejudice determinations should not depend on the idiosyncrasies of a particular decision maker, such as unusual propensities towards harshness or leniency. And that takes on additional relevance here because when Mr. Walter's, when the plea offer was extended in March 2012, no judge had been assigned to Mr. Walter's case. So it would be unreasonable to conclude that there's no reasonable probability that a court would have accepted the offer in March 2012 based on what happened a year later. We don't know whether it would have been the same judge, and we don't know. The question is whether there's actual prejudice and you've got a state trial judge who was in charge of accepting the plea. I would never accept a 20-year maximum for what he did. And that was important to remember. Sometimes we get away from it, but just how brutal this crime was. And he got mad at his girlfriend over something and just brutalized her and raped her and all the rest. And you've got a brutal crime combined with a very unfavorable criminal history and an unwillingness to take advantage of past opportunities that were offered to him to reform his conduct. That's a lot to overlook. Correct. But, you know, the issue is that we do know that the state was aware of all of this information, all of it's true. The state was aware of that in March and still extended a 20-year offer. So at least the state thought there was a reasonable probability that a court would have accepted the offer. But it was not binding on this. This was not a plea that was binding on the judge if he didn't want to accept it. Yes, that's true. But I think it's unlikely that the state would extend an offer that it didn't think a court would be willing to accept. But the state is only one party to it. Mr. Walters, even in August of 2012, when Mr. Stanley offered to put the March plea back on the table, Mr. Walters said no because during this entire time, as you're well aware, he felt he was a victim, oddly enough, because he thought his girlfriend had cheated on him and that he was the victim of everything and that he deserved leniency and didn't deserve any incarceration time or at a minimum, very little. He somehow, I don't know how he arrived at this conclusion, he somehow thought that his actions were justified and that he was the victim and there was no way he was going to accept 20 years where he felt he'd been wrong, perversely felt he'd been wrong. Well, again, I think going back to Fry, if we're looking at Mr. Walters' behavior in the context of the counsel he was receiving, at the time, he was either receiving no or very little counsel from Mr. Stanley. Mr. Stanley hadn't given him a lot of advice, hadn't given him a reason to trust him. I'm not suggesting that Mr. Stanley acted appropriately. In fact, I don't think he did. I think the performance prong was not satisfied. It all comes down to prejudice. But again, in August 2012, there was a communication. Mr. Stanley offered to put the March plea deal back on the table and Mr. Walters said, no dice. It's just a tough thing to overcome, because it's a hard case, given the fact that these findings of prejudice are factual in nature. Well, again, looking at Fry, Fry asks, as I said, what a defendant would have done had he received effective counsel, and Mr. Walters did eventually receive effective counsel in September 2012, and at that point, he stopped requesting leniency and he started to negotiate a new plea agreement. So if we focus on what he did with effective counsel, which is what he did with ineffective counsel, we see that he stopped asking for mercy, asking for leniency, and didn't negotiate that plea agreement. I want to address another issue with the court's conclusion that the trial court would not have accepted the offer. As I said, one issue is that we don't know whether it would have been the same judge, but the other issue is that the state courts failed to acknowledge how circumstances changed between March 2012 and March 2013 and how that could have changed the judge's opinion of Mr. Walters. For one thing, the state implemented that 43- to 65-year sentence, or sorry, the court did, after the state actively lobbied for it. But had Mr. Walters been able to accept the March offer, the state would have been lobbying for a 20-year sentence, and there's a good chance that the court would have given that recommendation at least some weight. You may be right in that. The time from March to December is a lot of time, and a lot of things could happen. But don't you have the burden of showing that the PCR court was wrong in the conclusions it reached? I mean, its conclusions weren't unreasonable. You disagree with them, and you make a case for it. You've laid out the case. But I'm wondering, you know, we're a federal court being asked to review a state court process. And essentially, at the foundation, we're to stay out of it unless we really have an ability or whether we see something that really violates the federal constitution. And in this case, that burden lies on you. And the trouble is, you have these findings by the PCR court, which we're essentially told to leave alone unless they're really off the charts. And so you've made that case, but how do we say the state PCR court was unreasonable? Right. I see I'm out of time. Can I answer that question? Yeah, go ahead. Please proceed. Yes. So I think the real issue here is sort of the standard that's outlined in Frye of, you know, a reasonable probability. Mr. Walters needs to show a reasonable probability that the court would have accepted the offer, right? That's not a terribly high standard. He doesn't have to prove that it definitely would have. And I think, you know, when you look at the fact that we don't know whether it would have been the same judge. It could have been a different judge. We don't know what a different judge may have thought about Mr. Walters. I'm not sure why we wouldn't, in looking at prejudice, look at a historical matter and take as a given that it was assigned to the judge who expressed the reservations that he did. It's not a hypothetical universe of judges, I wouldn't think. I think when you're looking at was there prejudice in this case, you're looking at it as a historical matter. And you're saying, no, it wouldn't come before this judge. He was just emphatic. At any rate, you have some rebuttal time. And if my colleagues have any questions of you, I'm perfectly willing to wait until they've responded. Judge Niemeyer, do you have any further questions? I'm ready to go on to hear the other side, and then we'll hear her. Judge Agee? So am I. All right. Well, we thank you, Ms. Mitchell, and we look forward to hearing from you in rebuttal. Thank you. Mr. Williams, when you're ready, let's hear from your side of it. Well, thank you, Your Honors, and may it please the Court. In this case, the state habeas court had resolved a fact-intensive hypothetical, namely, what would have happened if the petitioner had been told about the state's early plea offer? This counterfactual required the state court to parse multiple competing pieces of evidence going to petitioner's particular state of mind at a given point in time, and the trial court's later willingness to impose a substantially lower sentence than the one it ultimately imposed. That analysis, as the court seems to recognize this morning, required credibility assessments at essentially every step of the way. The petitioner would like this court to tackle that counterfactual anew, for all matter of fact that, in his view, the state court should have given more credit to. But in the end... Let me ask you a question, Mr. Williams. Certainly. In assessing prejudice, should we assess the fact that this might have been assigned to any member of a universe of judges and sort of take the fact that if there's even one that would have sentenced him to a more lenient thing, that that weighs in favor of finding prejudice, or should we look at it simply as a historical matter and look at the fact that, as a matter of historical fact, it was assigned to this judge, and this judge said, no way am I going to limit myself to a 20-year maximum sentence. And so, historically, as a matter of fact, of what happened here, there was no prejudice. I think it's the latter, Your Honor, and you could look at that for a couple of reasons. One is it's, just as you said, it's what happened. We don't have to blind ourselves to what actually happened in the assignment that was eventually made. But even if you want to try and speculate that this could have been assigned to another judge within the circuit court, what this judge did in this case is a very good indication of what an objective, reasonable jurist would have done. And I'm saying the same thing would apply under Strickland to juries. Right. We can't say, well, he went through a jury trial and there may have been some hypothetical jury out there that would have ruled in his favor. You have to take the actual jury that heard the case. And if that's true with juries, you'd have to do the same thing with a trial judge. In other words, I'm thinking, you can't just speculate it to another judge or another jury or whatever. You have to talk about that judge and that jury in assessing prejudice. I think that's exactly right, Your Honor, because otherwise all the court's left with is speculation. And I think, indeed, this case shows the danger of that speculation because Petitioner's argument seems to be that this particular trial judge was idiosyncratically harsh. But in reality, when you read the transcript, the trial judge was justifiably outraged at the nature of these facts. And instead that a recidivist enhancement could have been justified and probably should have been. Well, Mr. Williams, is it necessary even to address the second part of the Frye test? And here, as if I'm remembering the record correctly, the West Virginia Supreme Court only addressed the first prong, as did the magistrate judge and the district court. So unless the defendant is able to show, by clear and convincing evidence, that there was an unreasonable determination on the first prong, which was that Mr. Walters would have accepted the guilty plea, which the state PCR court found that he would not, the case is over, isn't it? That's absolutely correct. These are two separate independent prongs. The court sees that in both Frye itself and the way that Frye was applied by this court in Merzbacher. So the court could just as easily decide on that first prong. And indeed it should. There's substantial reasonable evidence upon which the state habeas court could have relied to find that this petitioner would not have accepted the low plea when it was offered earlier in 2012. And you've heard some of it discussed already this morning. Some of those include the letters pleading for mercy, the letters suggesting that he wanted to get out right away. There was extensive discussion about his young son and how he thought he should be present in his young son's life. This is clearly a petitioner who was not coming to grips with the reality of the situation and the combination of both the heinous facts of the crime that was at issue and his substantial criminal history. And so any of those facts would have been a reasonable basis for the state habeas court to rule as it did. And we have to keep in mind it's easy to sort of blow past those ethical standards because they're frankly so headache-inducing sometimes. But the standard is really whether any fair-minded jurist could have ruled as they did. And the state habeas court, the Supreme Court, the magistrate judge, the district court all agreed that there were more than reasonable bases to determine that at the point in time in which this decision was presented to him that this petitioner was simply not willing to come to grips with the nature of his potential sentence. You've got to admit, Mr. Williams, that Mr. Stanley did not cover himself with glory in his representation of Mr. Walters in this case. I mean, it's, you know, it flatly fails the performance prong. But the Supreme Court has encouraged this to pick up prejudice first and undergo directly to prejudice without talking about performance. But it's just as worth remarking that the lawyer's performance here did leave a great deal to be desired. I gather you would agree with that? I agree, Your Honor. I think, again, this is similar to Merzbacher in that there is substantial reason to question what was done here and the facts unwound on the deficient side. But ultimately, as in Merzbacher, there's simply no reason to make a finding as to the deficient failure to meet standards of professional conduct because the prejudice prong is really what decides this case. And the prejudice prong is an unfortunate condition or a losing argument for two separate cases. Well, we've been encouraged to take up the issue of prejudice first. Correct. That's right. And I think it's especially easy and especially appropriate for the court to do so in the state habeas context given the standards of deference that are owed to the findings of the state court. The Supreme Court has said this is a substantially high standard, and it was a very difficult standard to meet because it was, quote, meant to be. And so for a petitioner to come here and sort of put their own gloss on facts simply isn't enough. And as Merzbacher, again, reiterates, it's all well and good to say that a petitioner might be able to tell a story in which they potentially maybe could have suffered prejudice. But so long as the state court had a reasonable basis upon which to find otherwise, and so long as a reasonable jurist could have found otherwise, then this court has simply no discretion to do anything other than to affirm that decision. So your honors, we really do think that this is a decision that's driven by those epidephram standards, that this really is kind of the unexceptional state habeas case in that way. But given the substantial evidence that was in this record to permit the state habeas court to conclude, as it did, that this is a petitioner who was not willing to accept early in 2012 the plea that was presented, it simply isn't a reversible decision. And the district court correctly determined that a writ was not issued here, or should not issue here. What's your response to the petitioner's suggestion that the deficiency in performance actually implicates our analysis on prejudice insofar as she argues that he could have been talked into accepting the plea and maybe persuade the court to accept the plea if he had good counsel? I think that's what she's arguing, in essence, in one aspect. That's how I understand the argument as well, your honor. And respectfully, I think it airs both as a matter of fact and as a matter of law. As a matter of fact, this is a petitioner who fought every step of the way early on to any suggestion that he was going to face any substantial prison sentence. In fact, although the petitioner now puts the spin on it that the professional relationship between counsel and the petitioner broke down because of the early absence of the lawyer from the case, what a lot of the evidence actually suggests is that the professional relationship broke down because the lawyer was pushing the petitioner too hard to face the reality of his situation and trying to get him to understand, sometimes in frankly very coarse terms, that he was in a very bad situation, that a jury would not find him credible, that given his intent not to testify, he really had no way of mounting a defense. And even given the attorney's very emphatic insistence that these facts are terrible for him, the petitioner continued to insist on moving forward. And again, some of the correspondence the petitioner himself issued to both the court and the prosecution's office provide a contemporaneous insight into the nature of his thinking over the entire course of this discussion, both early on and then well into July and August. He's continuing to maintain that he's an innocent activist. Mr. Williams, if you could reflect on it in this slide, and I meant to ask, oppose, and cancel this so perhaps she can answer it as well when she's up. Sure. Under the Supreme Court of West Virginia's order, it said that Mr. Walter's sole ground was the ineffective assistance of trial counsel for failing to provide him the March 9, 2012 plea offer. And that's the same issue that appeared in the Magistrate Judge's report, the District Court's report, and that's what the Certificate of Appealability was granted on in this case. Now, petitioner asked to expand the Certificate of Appealability to say that prejudice should be presumed because of counsel's pervasive failure to communicate. That request was denied. So it strikes me that some of the argument there is on an issue the court has already determined we would not hear. That's exactly right, Judge Agee, and you actually anticipated the second part of my answer, which is the legal part of the answer. As a legal part, this claim was not, this sort of cumulative error claim, was not presented in either the State Court petition or the Federal Court petition. Although they allege the argument was made below, they're referring to certain briefs in support of certain arguments that were made in the District Court. They did not amend their petition below to state those claims. They then come here with a constrained Certificate of Appealability. They, as you just noted, tried to move to expand their certificate, and the court denied that request, said that they could not mount a claim under chronic, and then the court's decision in Fisher says that they couldn't in any event try and make a sort of cumulative error claim on an ineffective assistance anyway. If the court were going to consider these other claim instances of deficiency, it has to consider them as discrete actions and then undertake the Strickland analysis for each individual discrete action. So for at least three separate reasons, even if you put aside the specific facts of this case, there wouldn't be a legal basis for the court to consider those sort of cumulative error, ephemeral arguments from the petitioner anyway. So that's exactly right, Your Honor. Mr. Williams, do you have anything further? No, Your Honor. I think the state would be content if the court has no further questions to rest on their brief, and we would respectfully ask that you affirm the decision of the District Court to decline to issue the brief. Judge Niemeyer, Judge Agee, do you have anything further to ask Mr. Williams before we hear a written rebuttal? I'm fine, thank you. Nothing further. All right, counsel, let's... Thank you, Mr. Williams. Counsel, let's hear from you in rebuttal, all right? Okay. Thank you, Your Honors. I'd first like to address the matter you were just discussing about Fisher in particular  and we would distinguish this case from Fisher because in Fisher, the issue was considering individual actions that were not individually errors and the court declined to say, you know, cumulatively those resulted in harm. And that's not what we're doing here. We're really asking the courts to do what Strickland and Frye asked the court to do, which is to consider for the broader circumstances when evaluating prejudice. You know, we don't need a chronic claim to do that because Strickland, you know, talks about the fundamental fairness, talks about evaluating all the circumstances. And again, Frye asks what a, you know, to look at what a defendant would have done had he received effective counsel. Let me ask you this. What, you know, what... The judicial system is hierarchical and we are under, seems to me, a special obligation to follow the decisions of the Supreme Court. And you read a decision like Harrington v. Richter, for example, and that just goes on and on and stressing how deferential we are supposed to be. And there's also a string of per curiam reversals of circuit courts that have tried to unduly interfere particularly with state PCR court backfinding. So what do you do with that strong institutional interest that we have and the very stern guidance backed up by per curiam reversals when we stray beyond our proper role? I mean, what... Are we just supposed to sort of throw those restraints overboard? I mean, that seems to me where we would be headed given the fact that there was a clarity to the state court backfinding. We are not asking this court to do that. We are wanting to focus on what Frye and Strickland tell the state habeas courts to do when evaluating prejudice, which is especially in a case like Mr. Walters and like the situation in Frye is to focus on the later acceptance of the lesser offer to bolster the credibility of the defendant's statement that he would have accepted the earlier offer. But it is when at the end of the day it is a factual determination. Is it not? Yes, it is. But that fact, the fact that he later accepted the lesser offer, we know that does not require credibility finding. We know that. We, of course, realize that the state did make a credibility finding and we are not disputing that necessarily. But that fact, that crucial fact... But does not that fact, that is a stream of logic that follows. And Frye talked about that. In other words, if you later accept a higher sentence, it's sort of indicative of the fact that you would have accepted the lower one had you had it. But that logic seems to be interrupted by the second offer in this case. How do you handle that? He was specifically asked and the court found as a fact that he was offered, number one, to make an attempt to reopen the March offer and number two, to consider the 28-year offer. And the court said he rejected both. And again, I think that goes to the Frye focus on considering what he, in the context of the counsel he was receiving, right? You know, as I said, he'd spent seven months trying and failing to get Mr. Stanley to help him. He didn't trust Stanley's advice. He knew that Stanley had allowed a favorable offer. You're focusing on the facts and as if we were a fact finder. Right. My question is, we have a state court ruling that he rejected those and also laid the foundation for those rejections that he basically was not inclined to accept any offer at that point. He thought he was innocent and he thought that he had reasons for not accepting any plea at that point. And it's not whether that's right or wrong. It's how do you address the fact that we have the finding? In other words, the only thing you can say is that finding is just totally unreasonable, isn't it? No, I wouldn't say that. Again, I think we need to focus on what Frye says which is had he been afforded effective counsel, what he would have done. No, you're missing my question. I'm not arguing. What I'm arguing is you constantly ask us to consider facts and that's legitimate if you're making an argument that the state court was off the charts but the state court made the finding. We don't need to look at the facts except to determine did the state court act reasonably in making those findings? And it sounds to me the state court was very reasoned. They laid out each step as to why they reached a conclusion. They had evidence in the record to reach it. You would probably disagree on that fact finding. If you were the judge, you might have gone the other way but we have this finding and it's hard to come to grips with that but I think that's our role at this point in time, isn't it? Well, I think the issue with that is that the state courts did have obviously the prerogative to make their factual findings but they needed to do that within the constraints of the law and the law says to consider in the context of the counsel he was receiving and by putting a lot of emphasis on what he did when he wasn't receiving effective counsel and discounting what he did when he did receive counsel was misapplying the law and another issue I would add with that is that the state supreme court mistakenly said that one of Mr. Walter's requests for leniency was sent in August was actually sent in November and that's a really significant error because as I said, he didn't have effective counsel in August but he did in November. Let me just ask you a factual question. To the degree that Mr. Walter said a change of heart, did that change of heart not come until after the indictment? So, when he... When he said, well, I might have accepted this plea after all. Well, I mean, I suppose the indictment was in June so I don't think we have... He didn't know about... All I'm suggesting is that we have a lot of cases where people... The closer they get to trial, particularly after an indictment, the more nervous they become and sometimes they often have a change of heart but the change of heart comes too late because the plea offer has expired but I'm not sure that... Just as a general matter, I'm not sure that any 11th hour change of heart implicates the unwillingness to accept the plea during the period before its expiration. You see what I mean? They're just people that... The trial date puts a real apprehension into a criminal defendant and it often induces a change of heart but I don't think it... It doesn't affect the prejudice analysis which is what was his state of mind prior to those expiration dates. Right. So, I think about the trial date and a really important fact is that in Frye, the defendant, Mr. Frye, didn't plead guilty until, I think, eight days before trial and that wasn't important to the court. The court said he accepted the lesser offer. He pled guilty to the more serious charge and that's what mattered and then I think with regards to the indictment, that happened in June, I believe, and Mr. Walters had not received any advice from his attorney. I think he'd spoken to him only once, right? And so, again, going back to Frye, looking at it in the context of what a properly advised defendant would do, is it right to penalize Mr. Walters for not having any counsel during that period? Thank you very much. We've given you a little bit of extra time here and unless my fine colleagues have additional questions, I'm going to wrap things up. But before doing so, Mr. Williams, I know you're probably here under circumstances that maybe you didn't expect and I wanted to express the appreciation of the court for the very fine argument that you've made and Ms. Mitchik, I think you've made a very fine argument. You've honed in on the Frye case, which is exactly what you should have done. I think you're doing exceptionally fine argument and we're always really happy to have student counsel here before us and if you ever want to go into practice of appellate law, I think there's a very promising path ahead. So, thank you. Thank you so much. Thank you. Thank you both so much. We can't do it personally and I hope you understand that we hope the day will come when we can.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee